# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                     Case No. 06-Cr-63

DANNY L. IVERSON and
DEBRA M. TIMKO,

    Defendants.

## MAGISTRATE JUDGE'S RECOMMENDATION AND ORDER TO THE HONORABLE RUDOLPH T. RANDA

On March 31, 2006, a federal grand jury sitting in this district returned a 33-count indictment against the defendants, Debra M. Timko and Danny L. Iverson. On February 6, 2007, the defendants were charged in a superseding indictment. Defendant Timko filed a number of pretrial motions. All but two – a motion to dismiss Counts 18-21 of the indictment (Docket # 33) and a motion to strike surplusage from the indictment (Docket # 35) – were previously addressed by the court.

On April 10, 2007, the court held a telephone conference with counsel for defendant Timko and counsel for the government. During that conference, defendant Timko's counsel advised the court that the superseding indictment had resolved the issue which served as the basis for defendant Timko's motion to strike surplusage. Therefore, with the acquiescence of counsel, defendant Timko's motion to strike surplusage will be denied as moot. Defendant Timko's remaining motion will be addressed herein.

## MOTION TO DISMISS COUNTS 18-21

Defendant Timko (defendant) moves the court to dismiss Counts 18-21 of the indictment on the grounds that the purported scheme described in these counts fails as a matter of law to satisfy the necessary elements of a violation of the mail fraud statute, 18 U.S.C. § 1341. According to the defendant, the only mailings alleged in Counts 18-21 consist of the checks issued by Local 150 and mailed to Elan Financial Services and these mailings were not for the purpose of executing the scheme as the statute requires. Therefore, the defendant maintains that these counts must be dismissed.

Specifically, the defendant asserts that the credit card used as the basis of the charge in Counts 18-21 had been issued to Local 150 of the Service Employees International Union by Elan Financial Services and was not defendant Timko's personal credit card. Therefore, all billings for charges incurred on the credit card were billed directly to Local 150. The defendant maintains that the alleged scheme reached fruition when she received the goods and services that the government asserts constituted non-reimbursable expenses. As a result, she contends that the later mailing of the checks by the union to Elan Financial Services to pay for the use of the credit card were not integral to any alleged scheme. The defendant relies on Kann v. United States, 323 U.S. 88 (1944), Parr v. United States, 363 U.S. 370 (1960) and United States v. Maze, 414 U.S. 395 (1974) to support her position.

In opposing the motion, the government asserts that the defendants' scheme charged in the indictment included a scheme to defraud Local 150 and its members of their right to honest services from defendant Timko, which included her obligation to protect the assets of Local 150. The government states that the specific mailings which form the basis of Counts 18-21 involve checks issued by Local 150 that were mailed to Elan Financial Services to pay

for charges on the union's credit card, including fraudulent charges for the defendant's personal expenses. According to the government, each of the checks at issue was personally signed by the defendant in her capacity as either Local 150's chief of staff or its president.

The government assets that each of the mailing was integral to the defendant ongoing scheme to defraud the union and deprive it of its right to the defendant's honest services. The government further maintains that even though the defendant had already received the personal benefit of charging her personal expenses on the union's credit card, the scheme to defraud continued when she issued union checks to pay for her fraudulent charges. The government states that unlike the facts in Maze, the mailings in this case furthered the defendant's scheme by concealing her fraud and making her apprehension less likely. Specifically, the government points out that the defendant's payment of the fraudulent credit card charges prevented the union from learning of her conduct and from detecting her fraud. The government also notes that, unlike the instant case, in both Kann and Parr, the mailings in question were made by outsiders who were not involved in the scheme to defraud. The government asserts that the present case is analogous to the situation in United States v. Sampson, 371 U.S. 75 (1962).

In order to prove mail fraud, the government must demonstrate: 1) the defendant's participation in a scheme to defraud, 2) the defendant's intent to defraud, and 3) the defendant's use of the mail in furtherance of the fraudulent scheme. United States v. Radziszewski, 474 F.3d 480, 484-85 (7th Cir. 2007) (quoting United States v. Davuluri, 239 F.3d 902, 906 [7th Cir. 2001]). "Mailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victim into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of

- 3 -

the defendants less likely than if no mailings had taken place.'" United States v. Lane, 474 U.S. 438, 451-52 (1986) (quoting Maze, 414 U.S. at 403); see also, Sampson, 371 U.S. at 80; United States v. Eckhardt, 843 F.2d 989, 994(7th Cir. 1988) (even mailings which occur after the defendant has obtained the victims' money are if furtherance of the scheme if they facilitate concealment or postpone investigation of the scheme); United States v. Rauhoff, 525 F.2d 1170, 1176 (7th Cir. 1975).

The defendant asserts that the facts in Parr are analogous to the facts in the instant case. In Parr, the defendants had obtained gasoline and other products for themselves by using the school district's credit card which the defendants were authorized to use for the district's purposes only. The oil company, which furnished the products to the defendants, would mail invoices to the school district for payment and the school district's payment was made by check sent in the mail. The mailings charged in the indictment were two invoices sent by the oil company to the district and the district's checks mailed back in payment. Relying on Kann, the Court held that there was not a sufficient nexus between the mailings and the execution of the defendants' scheme. The Court found that the mailings by outsiders were not an integral part of the scheme as planned and executed by the defendants and that, in fact, it was completely immaterial to the defendants what the oil company did about collecting its bill.

In Kann, cited by the defendant, the defendants fraudulently obtained checks payable to them which were cashed and deposited at a bank. The mailings charged in the indictment was the mailings of the checks for collection by the banks which cashed them to the banks upon which the checks were drawn. The Court found that defendants had received the moneys they intended to receive under the scheme and thus, the scheme had reached

fruition. The Court explained that it was "immaterial" to the defendants, "or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank." 323 U.S. at 94. Therefore, the court concluded that the mailings in question were not for the purpose of executing the scheme as required by the statute.

In Maze, also relied upon by the defendant, the defendant unlawfully obtained another person's credit card issued by a Louisville bank. He used the credit card to obtain goods and services from motel operators in various states, knowing that the motel operators would mail the sales slips for the purchases to the Louisville bank, which would in turn mail them to the individual. The Court addressed the issue of whether the mailings of the invoices, which the defendant signed, from the out of state motels to the Louisville bank were sufficiently closely related to the defendant's scheme to bring his conduct within the statute. The Court concluded they were not.

The Court held that the respondent's scheme reached fruition when he checked out of the motel and there was no indication that the success of the scheme depended in any way on which victim ultimately bore the loss. In fact, the Court noted that the defendant probably would have preferred to have the invoices misplaced by the motel personnel and never mailed at all. The Court distinguished Sampson, explaining that the mailings in Sampson made the defendant's apprehension less likely and were designed to lull the victims into a false sense of security and postpone their ultimate complaint to the authorities. On the other hand, the Court pointed out that the successful completion of the mailings in Maze actually increased the probability that the defendant would be detected and apprehended.

In Sampson, relied upon by the government, various employees of a nationwide corporation were charged with a scheme to defraud businessmen by obtaining advance fees

- 5 -

based on the promise that the defendants would help the businessmen to obtain loans or to sell their businesses. The checks received as advance fees were deposited into the defendants' accounts and the plan provided that a form letter be sent to the victims assuring them that the services they had contracted for would be performed. The Court noted that the indictment specifically alleged that the accepted application and cover letters were mailed to the victims by the defendants "for the purpose of lulling them by assurances that the promised services would be performed." Sampson, 371 U.S. at 81.

The holdings in Kann, Parr, and Maze. must be read in light of the Court's decision in Schmuck v. United States, 489 U.S. 705, 712 (1989), which is not cited by the parties. In particular, "[a]lthough *Schmuck* did not overrule *Kann, Patt* and *Maze*, it emphasized that courts must consider the full scope of the scheme when determining the sufficiency of the mailing element." United States v. Ashman, 979 F.2d 469 (7th Cir. 1992); see also, United States v. Lack, 129 F.3d 403 (7th Cir. 1997).

In Schmuck, the Court further defined the scope of the mail fraud statute, reiterating that a mailing that is "incident to an essential part of the scheme" satisfies the mailing element of a mail fraud offense. 489 U.S. at 712 (citing Pereira v. United States, 347 U.S. 1, 8 (1954). The defendant in Schmuck, a used car dealer, purchased cars, rolled back the odometers and sold the cars to dealers with prices artificially inflated by the low-mileage readings. Relying on the altered readings, the dealers resold the cars to consumers. To complete the resale of cars, the dealers would submit title applications to the Wisconsin Department of Transportation on behalf of the buyers. The mailing of the title application form supplied the mailing element of each of the charged mail frauds.

- 6 -

In concluding that the mailing of the title application forms was sufficient to satisfy the "use of the mails" requirement of the statute, the Court stated: "To be part of the execution of the fraud . . . the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in the plot." Id. at 710-11. (citations omitted). The Court found that the success of Schmuck's venture depended upon his continued harmonious relations with, and good reputation among, the dealers which in turn required the smooth flow of cars from the dealers to their customers. Id. at 711-12.

In United States v. Lane, 474 U.S. 438 (1986), the court also addressed the "in furtherance requirement" of the mail fraud statute. The defendants in Lane developed a scheme to set fire to a duplex they owned so that they could collect the insurance proceeds. After the duplex was burned, on separate three occasions, the defendants signed proof of loss claims and submitted them to an insurance adjuster, who issued drafts totaling $12.000. The insurance adjuster later mailed the proof-of-loss claims to the insurer's headquarters. In rejecting the defendants' argument that the mailings occurred after receipt of the irrevocable payment and after the scheme had come to fruition, the Court held that the mailings facilitated concealment of the scheme and were intended "to 'lull' the insurer into a false sense of security." Id. at 452.

In this case, defendant Timko, as an official in Local 150, signed and mailed checks from Local 150 to the credit card company in satisfaction of the balance due on the union's credit card. Having obtained the goods charged to the union credit card, defendant Timko paid the credit card bills using union funds which effectively concealed the defendants' scheme to defraud. Payment of the union credit card bills prevented the union and credit card

company from becoming suspicious, thereby allowing the scheme to continue. Like the situations in Sampson, Schmuck and Lane, the mailing of the checks to pay the amount due on the credit card helped facilitate and prevent detection of the defendants' fraudulent scheme. Therefore, the payment of the credit card bills was clearly an essential part of the fraudulent scheme and "in furtherance" of the defendants' scheme to defraud. See Lane, 474 U.S. at 452.

Defendant Timko's reliance on Kann, Parr, and Maze that the mailings at issue were not 'in furtherance" of the scheme is not persuasive. As the Court in Schmuck explained:

> The intrabank mailings in *Kann* and the credit card invoice mailings in *Parr* and *Maze* involved little more than post-fraud accounting among the potential victims of the various schemes, and the long-term success of the fraud did not turn on which of the potential victims bore the ultimate loss.

489 U.S. at 714. By contrast, in this case the long-term success of the defendants' fraudulent was dependent on the ability to conceal the scheme by settling credit card balances on behalf of the union. The mailings here lessened the chances that the defendant's fraud would be discovered. The mailings allowed defendant Timko to "cloak the scheme with an aura of legitimacy, thereby preventing its detection and allowing it to continue." Lack, 129 F.3d at 408.; see also, Schmuck, 489 U.S. at 714, Lane, 474 U.S. at 452; Ashman, 979 F.2d at 483; United States v. Laurenzana, 113 F.3d 689, 694 (7th Cir. 1997).

In sum, for the reasons stated herein, the court concludes that the mailings charged in Counts 18-21 of the indictment were in furtherance of the defendant's scheme to defraud. Therefore, the court will recommend that the United States district judge enter an order denying defendant Timko's motion to dismiss.

- 8 -

Case 2:06-cr-00063-RTR   Filed 04/24/07   Page 8 of 9   Document 52

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Timko's motion to dismiss Counts 18-21 of the indictment. (Docket # 33).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Timko's motion to dismiss Counts 18-21 of the superseding indictment. (Docket # 48).

**IT IS ORDERED** that defendant Timko's motion to strike surplusage from the indictment be and hereby is **denied as moot**. (Docket # 35).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation or order herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 24th day of April, 2007.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge